UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CIVIL ACTION |
|---|---|---|
| | * | |
| VERSUS | * | NO. 19-2340 |
| | * | |
| E.R.R. LLC, ET AL. | * | SECTION "L" (5) |
| | * | |

**ORDER AND REASONS**

Before the Court is the United States' Motion to Strike Defendants' Demand for Trial by Jury. R. Doc. 13. Defendants oppose the motion. R. Doc. 14. The United States filed a reply to Defendants' opposition. R. Doc. 18. Because the United States raised a new argument in its reply, R. Doc. 18, Defendants filed a sur-reply, R. Doc. 22. Having considered the parties' briefs and applicable law, the Court now rules as follows.

I.  BACKGROUND

This case arises out of an alleged May 2015 oil spill on the Mississippi River. R. Doc. 1 at ¶ 1. Plaintiff United States filed suit against Defendants E.R.R. LLC, Evergreen Resource Recovery LLC, and Hugh Nungesser, Jr., seeking the recovery of cleanup and removal costs of $632,262.49 under the Oil Pollution Act ("OPA"). R. Doc. 1. The United States contends the oil spill originated from a wastewater storage and treatment facility in Belle Chasse, Louisiana owned by Defendants. R. Doc. 1 at ¶ 29.

The United States alleges Defendants did not report oil discharge in the Mississippi River as required under the Clean Water Act. R. Doc. 1 at ¶ 27. Further, the United States alleges once the Coast Guard was made aware of the oil, "hours later," the Coast Guard found approximately one mile of oil contamination in the river and along the shoreline. R. Doc. 1 at ¶ 28. The United States contends the "Coast Guard investigated potential sources of the oil spill and determined that

the spill originated at Defendants' Facility." R. Doc. 1 at ¶ 29.

The United States allege Defendants then engaged Oil Mop, LLC—a Coast Guard-certified Oil Spill Removal Organization ("ORSO")—to conduct removal operations pursuant to a prior contractual agreement, with cleanup operations beginning on May 13, 2015. R. Doc. 1 at ¶ 30. Following completion of the cleanup operations, the United States alleges "Oil Mop submitted its bill to Defendants on July 22, 2015 . . . [and] Defendants did not pay the bill." R. Doc. 1 at ¶ 33. The United States avers that, as a result of Defendants' refusal to make payment, Oil Mop's claim was presented to and adjudicated by the National Pollution Funds Center ("NPFC" or "the Fund"). R. Doc. 1 at ¶¶ 34–35. The United States further alleges the NPFC accepted the claim and paid Oil Mop $631,228.74. R. Doc. 1 at ¶ 35. Moreover, pursuant to the terms of the alleged agreement, "Oil Mop assigned, transferred, and subrogated all, [sic] rights, claims, interests and rights of action to the United States." R. Doc. 1 at ¶ 35.

The United States thus seeks repayment from Defendants under § 1002(a) of the OPA, which provides:

> [E]ach responsible party for . . . a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) of [33 U.S.C. § 2702(b)] that result from such incident."

R. Doc. 1 at ¶ 9 (citing 33 U.S.C. § 2702(b)). The OPA defines "removal costs" as "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident." 33 U.S.C. § 2701(30).

Alternatively, the United States seeks repayment pursuant to its subrogation rights under OPA §§ 1012 and 1015. R. Doc. 1 at 1. After the NPFC has paid a claim, § 1012(f) of the OPA states the U.S. government "acquir[es] by subrogation all rights of the claimant . . . to recover from

the responsible party." *See* 33 U.S.C. § 2712(f). Moreover, pursuant to § 1015(c) of the OPA, the United States is entitled to bring an action seeking "any compensation paid by the Fund to any claimant pursuant to this Act, and all costs incurred by the Fund by reason of the claim, including interest (including prejudgment interest), administrative and adjudicative costs, and attorney's fees." 33 U.S.C. § 2715(c). Accordingly, in addition to a judgment against Defendants for removal costs of $632,262.49, the government seeks all additional costs incurred by the Fund, including interest, administrative and adjudicative costs, attorney's fees, and any other appropriate relief. R. Doc. 1 at ¶ 2.

Defendants deny all liability, deny its designation as a "responsible party" under the OPA, and deny the government's bringing suit under the OPA, alleging the government failed to comply with the statute's notice requirement. R. Doc. 8. Further, Defendants contend the Coast Guard failed to properly investigate other potential sources of the oil and did not properly identify the source or pathway from Defendants' facility to the oil spill. R. Doc. 8 at 12. In their Answer, Defendants also "pray for trial by jury on all issues so triable." R. Doc. 8 at 12.

## II. PRESENT MOTION

Before the Court is the United States' Motion to Strike Defendants' Demand for Trial by Jury. R. Doc. 13. In support of its motion, the United States asserts two reasons Defendants' are not entitled to a jury trial in the instant removal cost recovery claim under the OPA: "(1) Congress did not provide a right to a jury trial in OPA cases, and (2) the Seventh Amendment does not provide a right to a jury trial here because an OPA cost recovery action seeks equitable, not legal, relief." R. Doc. 13-1 at 2. Additionally, the United States contends "ample case law demonstrates that the nature of the United States' recovery claims in this case forecloses any constitutional [jury] question." ." R. Doc. 13-1 at 2.

3

Defendants oppose the motion. R. Doc. 14. Although Defendants do not dispute the OPA "does not statutorily include a right to a jury trial," Defendants nonetheless assert they are entitled to a jury trial under the Seventh Amendment to the United States Constitution. R. Doc. 14 at 2–3. Specifically, Defendants contend "the relief sought by the United States—monetary damages—is a classic example of a legal remedy." R. Doc. 14 at 1. Defendants maintain that, because "the government seeks legal—not equitable—relief," Defendants have a constitutional right to a jury trial. R. Doc. 14 1, 3.

The United States filed a reply to Defendants' opposition. R. Doc. 18. Because the United States raised a new argument in its reply, R. Doc. 18, Defendants filed a sur-reply, R. Doc. 22. The new argument the United States raised is that "the Coast Guard's final agency action that adjudicated the amount of removal costs incurred in this case is subject to the Court's highly deferential record review under the Administrative Procedures Act." R. Doc. 18 at 1. Defendants contend the United States' position is not supported by existing case law and argue the United States is seeking an award of monetary damages and not the review of any agency decision. R. Doc. 22 at 1.

Accordingly, the issue before this Court is whether a cost recovery claim brought under the OPA is afforded a right to jury trial under the Seventh Amendment to the United States Constitution.

### III. LAW AND ANALYSIS

When a party demands a jury trial, a trial on all issues so demanded must be by jury unless "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). When no such federal right to a jury trial exists, the Court may strike a jury demand. *See id.* A federal right to a jury trial must be provided by either

the Constitution or by statute. *See* Fed. R. Civ. P. 38; *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). "Courts look to the statute before engaging in a constitutional analysis." *In re Oil Spill by the Oil Rig Deepwater Horizon*, 98 F. Supp. 3d 872, 878 (E.D. La. 2015) (citing *City of Monterey*, 526 U.S. at 707). Undisputedly, the OPA "does not statutorily include a right to a jury trial." R. Doc. 14 at 2; *see also In re Deepwater Horizon*, 98 F. Supp. 3d at 878 ("OPA does not expressly provide for a jury."). Accordingly, the Court turns to the Constitution—specifically the Seventh Amendment—in its analysis.

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const., amend. VII. The Seventh Amendment provides a trial by jury not only in common-law forms of action, but also in new statutory causes of action where "the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194 (1974). Indeed,

> when Congress provides for enforcement of [new] statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.

*Id.* Therefore, the Court must determine whether the instant cause of action "was tried at law at the time of the founding or is at least analogous to one that was." *City of Monterey*, 526 U.S. at 708 (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996)); *see also Tull v. United States*, 481 U.S. 412, 417 (1987). In *Tull*, the Supreme Court highlighted two important factors for courts to consider in this determination: (1) the nature of the cause of action, and (2) the nature of the remedy. 481 U.S. 412 at 417. In a subsequent decision, the Supreme Court stated the second stage of the analysis, the nature of the remedy sought, is the more important one. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). Still, either of the *Tull* factors can trigger a right to jury trial. 481 U.S. at 421 n.6 (rejecting "that both the cause of action and the remedy

5

must be legal in nature before the Seventh Amendment right to jury trial attaches" because each are simply "two important factors").

In this case, the United States brings suit under the OPA seeking removal costs. R. Doc. 13-1 at 1. The OPA was enacted in 1990 in an effort to streamline the federal legal process in the aftermath of oil spills so as to "provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills with the petroleum industry." *Rice v. Harken Exploration Co.*, 250 F.3d 264, 266 (5th Cir. 2001) (citing S. Rep. No. 101-94, *as reprinted in* 1990 U.S.C.C.A.N. 772, 723). Under the OPA, the "responsible party" of "a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages . . . that result from such incident." 33 U.S.C. § 2702. "The OPA imposes strict liability on parties responsible for the discharge of oil" without regard to fault. *Rice*, 250 F.3d at 266.

> To demonstrate that a party is strictly liable, the government must prove that (1) the defendant is a "responsible party" (2) for the "facility" or "vessel" (3) from which oil was discharged, or from which there was a substantial threat of discharge, (4) "into or upon the navigable waters or adjoining shorelines" and (5) that the discharge resulted in "removal costs and damages."

*United States v. Viking Resources, Inc.*, 607 F. Supp. 2d 808, 815 (S.D. Tex. 2009) (quoting 33 U.S.C. § 2702(a)).

Notably, two federal district courts in this Circuit have directly addressed whether a removal cost recovery claim under the OPA gives rise to a constitutional right to jury trial. *See In re Deepwater Horizon*, 98 F. Supp. 3d at 877–83; *Viking Resources, Inc.*, 607 F. Supp. 2d at 828–30. In *Viking Resources*, the court found no constitutional right to a jury trial exists under an OPA removal cost recovery claim, concluding "the recovery of removal costs under OPA constitutes an

equitable remedy." 607 F. Supp. 2d at 830. Addressing this particular OPA question for the first time, the *Viking Resources* court relied on cases wherein courts held there was no constitutional right to jury trial under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), a similar and analogous environmental cleanup statute. *Id.* at 829–30; *see Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 412 (3d Cir. 1995) ("[A] jury trial is not available in a claim brought under section 9607 [of CERCLA]."); *Apex Oil Co. v. United States*, 208 F. Supp. 2d 642, 653 (E.D. La. 2002) (noting "[t]he close analogy to the OPA found in cost recovery actions under [CERCLA] . . . cannot be ignored"); *Int'l Marine Carriers v. Oil Spill Liability Trust Fund*, 903 F. Supp. 1097, 1102-03 (S.D. Tex. 1994) ("A close analogy is found in cost recovery actions under section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act . . . Courts recognize CERCLA recovery actions as equitable claims.").[1] The *Viking Resources* court thus relied upon this "avalanche of authority" to conclude "the recovery of removal costs under OPA constitutes an equitable remedy," and therefore, the defendants had no constitutional right to a jury trial. 607 F. Supp. 2d at 830.

In *Viking Resources*, the United States sought two separate remedies—removal costs and natural resource damages—arising from the same event. 607 F. Supp. 2d at 828. The *Viking Resources* court therefore analyzed the two remedies sought by the government separately, *id.* at 829, and concluded that while the recovery of removal costs under OPA constitutes an equitable remedy not entitled to a jury trial, the recovery of natural resources damages under OPA constitutes a legal remedy entitled to a jury trial, *id.* at 830, 832. The *Viking Resources* court

---

[1] Other courts have similarly concluded, in the environmental cleanup context, that "damages in the form of past cleanup and removal costs already incurred constitute equitable restitution, for which no trial by jury is guaranteed under the Seventh Amendment." *See New Jersey Dep't of Envtl. Prot. v. Amerada Hess Corp.*, No. 15-6468(FLW), 2018 WL 2317534, at*8–9 (D.N.J. May 22, 2018) (collecting cases holding the same and applying *Hatco* to state Spill Act claims).

determined that "judicial efficiency would be best promoted by ordering that the entire case be tried to a jury" but "[f]or those issues that are equitable in nature . . . the jury's verdict will be only advisory." *Id.* at 832. Unlike in *Viking Resources*, the United States in this case only seeks the recovery of removal costs under OPA, *see* R. Doc. 18 at 4–5, which has already been shown to constitute an equitable remedy.

More recently, in *In re Deepwater Horizon*, a court in this district faced the question of whether certain claims brought under the OPA seek equitable or legal relief. 98 F. Supp. 3d at 877–83. However, it is unclear whether the *In re Deepwater Horizon* court conclusively determined whether a cause of action for removal costs under OPA constitutes a legal, rather than equitable, remedy. On one hand, the court reasoned:

> [T]he State does not seek to recapture something that BP wrongfully possesses. Rather, the action attempts to impose personal liability on the defendant for the expenses the State has incurred in responding to the oil spill. The Court finds that the State's claims for removal and response costs seek legal, not equitable, relief.

*Id.* at 881. On the other hand, earlier in the decision, the court suggests a claim for removal cost recovery may not constitute legal relief: "[State] seeks a remedy that is largely, if not entirely, legal . . . Although monetary relief does not always equal legal relief, [], most or all [of State's] claims indeed seek legal relief. The only exception may be the State's claim for removal costs." *Id.* at 880. Thus, while suggesting claims for removal costs under the OPA might be legal in nature, the *In re Deepwater Horizon* court did not conclusively hold that these claims seek legal, rather than equitable, relief. *See id.* Moreover, the United States points to the fact that the government in *In re Deepwater Horizon* sought removal costs in addition to other claims for monetary damages under the OPA that were legal in nature; specifically, Alabama sought "money damages for injuries to its property, loss revenues, and increased service costs" resulting from BP's oil spill. R. Doc. 18 at 2. Meanwhile, in this case, the United States seeks only removal cost recovery.

8

Many federal district courts, including the courts in both *Viking Resources* and *In re Deepwater Horizon*, have acknowledged the potential open question on this issue in light of *Great-West Life & Annuity Insurance Co. v Knudson*, 534 U.S. 204 (2002).[2] For example, the *Viking Resources* court "acknowledges that the conventional wisdom as to the nature of the response cost remedy [under the OPA] is open to question, particularly in light of the Supreme Court's opinion in [*Knudson*]." 607 F. Supp. 2d at 803 n.79. In *Knudson*, the Supreme Court observed "not all relief falling under the rubric of restitution is available in equity," 534 U.S. at 212, and concluded that, "for restitution to lie in equity, the action generally must not seek to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession," *id.* at 214. Notably, however, *Knudson* was not a Seventh Amendment case, nor was it decided in the natural resource context. *See Amerada Hess Corp.*, 2018 WL 2317534, at *9–10 ("Few courts have considered the applicability of Knudson in the environmental cleanup context . . . *Knudson*'s impact has been largely confined to the ERISA context, or closely analogous actions concerning breach of fiduciary duty."). Moreover, "[t]he clear majority of courts [after *Knudson*] . . . have continued . . . to find that cost recovery actions for past restoration costs seek equitable relief, for which no right to a jury trial exists under the Seventh Amendment." *Id.* at *9. The Court therefore concludes that the *Knudson* decision is neither controlling nor dispositive of the issues presented in this case.

---

[2] *See, e.g. AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 452 (2d Cir. 2009) (declining to decide the constitutional right to a jury trial question but noting, "[i]n light of [*Knudson*], it is by no means clear that the restitution provided by [CERCLA] is equitable, rather than legal, in nature."); *United States v. Sunoco, Inc.*, 501 F. Supp. 2d 641, 650 n.12 (E.D. Pa. 2007) ("[T]he United States's assumption that restitution is equitable may also be called into question. The Third Circuit in *Hatco* did seem to presume that all restitutionary remedies are equitable. But the Supreme Court [in *Knudson*] has since clarified that restitution may be both legal and equitable."); *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, No. 2:14-595 WBS EFB, 2014 WL 4627248, at *6 (E.D. Cal. Sept. 16, 2014) ("[S]ome question has arisen [after *Knudson*] over the soundness of [the] assumption" that "CERCLA cost recovery actions are equitable in nature and thus that no jury trial is available.") (internal citations omitted).

9

The Court is not inclined to disrupt the "avalanche of authority" concluding that claims for removal cost recovery under the OPA seek equitable, not legal, relief. *See Viking Resources*, 607 F. Supp. 2d at 830. Accordingly, the Court finds the United States' removal cost recovery claim brought under the OPA seeks equitable relief, and therefore, the Defendants have no constitutional right to a jury trial. However, the Court notes that the law is, at best, uncertain in the Fifth Circuit and the Circuit has yet to weigh in on this issue. Moreover, the legal literature on this issue is also far from clear. *See, e.g.,* Addison J. Schreck, Empaneling the Peers of Polluters: Obtaining A Jury Trial Under the OPA and CERCLA As Explained in *United States v. Viking Resources, Inc.*, 2 Ky. J. Equine, Agric. & Nat. Resources L. 293 (2010). Therefore, the Court concludes that judicial efficiency would be best promoted by empaneling an advisory jury pursuant to Federal Rule of Civil Procedure 39 and submitting the case to this jury. Following the jury's decision, the Court will issue its ruling.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion to Strike Defendants' Demand for Trial by Jury, R. Doc. 13, is hereby **GRANTED**. The case will be tried as a bench trial with an advisory jury.

New Orleans, Louisiana, this 2nd day of October, 2019.

ELDON E. FALLON
U.S. DISTRICT COURT JUDGE