# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 19-2340 |
| | * | |
| E.R.R. LLC, ET AL. | * | SECTION "L" (5) |
| | * | |

## ORDER AND REASONS

Before the Court is Plaintiff United States of America's Motion for Partial Summary Judgment. R. Doc. 42. The motion is opposed. R. Doc. 45. Plaintiff filed a reply. R. Doc. 53. Have considered the applicable law and the parties' memoranda, the Court now rules as follows.

## I. BACKGROUND

This case arises out of an alleged May 2015 oil spill on the Mississippi River. R. Doc. 1 at ¶ 1. Plaintiff, the United States of America ("the United States" or "the Government"), filed suit against Defendants E.R.R. LLC, Evergreen Resource Recovery LLC, and Hugh Nungesser, Jr. (collectively, "Defendants"), seeking the recovery of cleanup and removal costs of $632,262.49 under the Oil Pollution Act ("OPA"). R. Doc. 1. The United States contends that the oil spill originated from a wastewater storage and treatment facility in Belle Chasse, Louisiana owned by Defendants. R. Doc. 1 at ¶ 29.

The United States alleges that Defendants did not report oil discharge in the Mississippi River as required under the Clean Water Act. R. Doc. 1 at ¶ 27. Further, the United States avers that once the Coast Guard was made aware of the oil, "hours later," the Coast Guard found approximately one mile of oil contamination in the river and along the shoreline. R. Doc. 1 at ¶ 28. The United States contends that the "Coast Guard investigated potential sources of the oil spill and determined that the spill originated at Defendants' Facility." R. Doc. 1 at ¶ 29.

1

The United States asserts that Defendants then engaged Oil Mop, LLC—a Coast Guard-certified Oil Spill Removal Organization ("ORSO")—to conduct removal operations pursuant to a prior contractual agreement, with cleanup operations beginning on May 13, 2015. R. Doc. 1 at ¶ 30. Following completion of the cleanup operations, the United States alleges that "Oil Mop submitted its bill to Defendants on July 22, 2015 . . . [and] Defendants did not pay the bill." R. Doc. 1 at ¶ 33. The United States avers that, as a result of Defendants' refusal to make payment, Oil Mop's claim was presented to and adjudicated by the National Pollution Funds Center ("NPFC" or "the Fund"). R. Doc. 1 at ¶¶ 34–35. The NPFC subsequently accepted the claim and paid Oil Mop $631,228.74. R. Doc. 1 at ¶ 35. Moreover, pursuant to the terms of the alleged agreement, "Oil Mop assigned, transferred, and subrogated all, [sic] rights, claims, interests and rights of action to the United States." R. Doc. 1 at ¶ 35.

The United States thus seeks repayment from Defendants under § 1002(a) of the OPA, which provides:

> [E]ach responsible party for . . . a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) of [33 U.S.C. § 2702(b)] that result from such incident."

R. Doc. 1 at ¶ 9 (citing 33 U.S.C. § 2702(b)). The OPA defines "removal costs" as "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident." 33 U.S.C. § 2701(30).

Alternatively, the United States seeks repayment pursuant to its subrogation rights under OPA §§ 1012 and 1015. R. Doc. 1 at 1. After the NPFC has paid a claim, § 1012(f) of the OPA states the U.S. government "acquir[es] by subrogation all rights of the claimant . . . to recover from the responsible party." *See* 33 U.S.C. § 2712(f). Moreover, pursuant to § 1015(c) of the OPA, the

2

United States is entitled to bring an action seeking "any compensation paid by the Fund to any claimant pursuant to this Act, and all costs incurred by the Fund by reason of the claim, including interest (including prejudgment interest), administrative and adjudicative costs, and attorney's fees." 33 U.S.C. § 2715(c). Accordingly, in addition to a judgment against Defendants for removal costs of $632,262.49, the government seeks all additional costs incurred by the Fund, including interest, administrative and adjudicative costs, attorney's fees, and any other appropriate relief. R. Doc. 1 at ¶ 2.

Defendants deny all liability, deny its designation as a "responsible party" under the OPA, and deny the government's bringing suit under the OPA, alleging the government failed to comply with the statute's notice requirement. R. Doc. 8. Further, Defendants contend the Coast Guard failed to properly investigate other potential sources of the oil and did not properly identify the source or pathway from Defendants' facility to the oil spill. R. Doc. 8 at 12.

## II. PRESENT MOTION

The United States now files a motion for partial summary judgment as to the amount of reimbursable costs in this case. The Government alleges that it is owed $631,228.74 for "oil removal costs" plus $1,033.75 for "administrative adjudication costs," totaling $632,262.49 in reimbursable costs. R. Doc. 42 at 1. Because removal costs were adjudicated by the NPFC, the United States argues that the figure represents a "final agency action" which "is subject to narrow and deferential review under the" Administrative Procedure Act ("APA"). R. Doc. 42-1 at 8–9. The Government contends that Defendants cannot surmount this burden because they failed to challenge the cost items in discovery and even signed off on daily work reports submitted by Oil Mop during the cleanup. R. Doc. 42-1 at 9.

3

Defendants oppose the United States' motion on two grounds. First, Defendants argue that factual questions remain as to "whether all of the recovery costs are related to the same spill." R. Doc. 45 at 2. Defendants rely on the deposition testimony to show that Coast Guard investigators failed to follow oil sampling guidelines, and as a result, it remains possible that the spilled oil came from sources other than Defendants. R. Doc. 45 at 2–5. Second, Defendants allege that the removal costs incurred were "arbitrary and capricious," thus rebutting agency deference given to NPFC's administrative determination. R. Doc. 45 at 5–7. Defendants rely on their expert's conclusion that removal costs were "over 10 times what should have been paid." R. Doc. 45 at 5–7.

In its reply, the United States addresses both of Defendants' arguments. First, the Government avers that it "does not have any burden to prove the negative that another oil discharge did not happen." R. Doc. 53 at 5. Even with evidence of "hypothetical comingled oil spills," cost nor liability is affected because "OPA liability is strict, joint, and several." R. Doc. 53 at 5. The United States also characterizes Defendants' relied-upon expert testimony in this regard as "unsound" and "speculative." R. Doc. 53 at 5, 7. Second, the Government asserts that Defendants' challenge to the removal costs are baseless and they cannot prove the determination was "arbitrary [and] capricious." *See* R. Doc. 53 at 2–5. The United States argues that "[e]very oil spill situation is unique and the response work and costs are influenced by a host of spill-specific factors." R. Doc. 53 at 3. As such, the Government contends that Defendants' reliance on their expert testimony is misplaced and does not serve to rebut the determination here. *See* R. Doc. 53 at 3–5.

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

4

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). But "unsubstantiated assertions," "conclusory allegations," and merely colorable factual basis are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50.

### B. OPA Cost Recovery

The OPA creates "a single Federal law providing cleanup authority, penalties, and liability for oil pollution." *In re Deepwater Horizon*, 745 F.3d 157, 168 (5th Cir. 2014) (internal citation

5

omitted). Under 33 U.S.C. § 2702, the "responsible party" of "a facility from which oil is discharged . . . into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) that result from such incident." Responsible parties are held "strictly liable for pollution-removal costs and damages associated with oil spills." *United States v. Am. Commercial Lines, L.L.C.*, 875 F.3d 170, 174 (5th Cir. 2017) (citing *Marine Servs. Inc. v. United States*, 663 F.3d 750, 752 (5th Cir. 2011)). Removal costs, at issue here, constitute but one of five elements to an OPA cost recovery claim.[1]

## IV. DISCUSSION

As a threshold matter, it appears that neither party disputes the costs actually paid to Oil Mop: $631,228.74. *Compare*, R. Doc. 42-13 at ¶ 13, *with*, R. Doc. 45-7 at ¶ 13. Nor do Defendants appear to challenge the $1,033.75 billed for administrative costs. Rather, at issue here is the basis for the $631,228.74 incurred for removal costs.

The NPFC previously assessed removal costs at $631,228.74 and found that amount to be allowable under the OPA. R. Doc. 1 at ¶¶ 34–35. Determinations by the NPFC are governed by the APA and will be reversed by a federal court "only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole." *Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 753 (5th Cir. 2011) (internal quotation marks omitted); *see also United States v. Jones*, 267 F. Supp. 2d 1349, 1363 (M.D. Ga. 2003) (reasoning that removal costs "are not recoverable if they are ruled to be arbitrary and

---

[1] Stated differently, to sustain a claim for cost recovery under the OPA, the Government must prove that:

(1) the defendant is a "responsible party" (2) for the "facility" or "vessel" (3) from which oil was discharged, or from which there was a substantial threat of discharge, (4) "into or upon the navigable waters or adjoining shorelines" and (5) that the discharge resulted in "removal costs and damages."

*United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808, 815 (S.D. Tex. 2009) (citing 33 U.S.C. § 2702(a)).

6

capricious").The burden when seeking a reversal of the NPFC's determination rests on the challenging party. *Id.* (citing *Ward v. Campbell*, 610 F.2d 231, 235 (5th Cir. 1980)).

In this case, Defendants' first argument appears to be that the Government must first prove the non-existence of alternative oil spills before the Court can determine the cost at issue. *See* R. Doc. 45 at 2–5. The Court does not agree with this assessment, as the burden is not on the Government to prove the non-existence of another oil spill. The present motion asks only for a determination as to reimbursable removal costs. R. Docs. 42, 42-1. Therefore, Defendants' proffered speculation on alternative oil sources will not affect the Court's analysis of this narrow issue. *See Viking Res., Inc.*, 607 F. Supp. 2d at 815 (setting forth costs and damages as but one of several claims in an OPA recovery action); *Jones*, 267 F. Supp. 2d at 1363 (same). Thus, to the extent another party may have contributed to the oil spill at issue in this case, it is irrelevant to the present motion.[2]

However, Defendants' second argument that the agency determination of cost was arbitrary and capricious is one that raises a genuine issue of material fact. Specifically, Defendants argue that the costs incurred are arbitrary and capricious because they were "excessive." *See* R. Doc. 45 at 5. In making this argument, Defendants primarily rely on the affirmation of their expert Frank Edwards, who "opine[d] that the per gallon oil spill costs for crude oil spills of less than 500 gallons ranges from $153.00 to $220.00." R. Doc. 45 at 6–7. Defendants thus contend that "reasonable response costs for this 378 gallon oil spill range from $57,834.00 to $83,160,00," R. Doc. 45 at 6, and "paying over 10 times what should have been paid is unreasonable, arbitrary, and a clear error

---

[2] Defendants cite to two pieces of evidence to demonstrate that another party may be partially responsible for the spill. First, Defendants cite to deposition testimony of an investigator who conceded that his team took only one sample of water borne oil, despite the Coast Guard guide recommending the taking of three samples. R. Doc. 4 at 2–7. Second, Defendants point to the deposition testimony of its expert who determined that two barges "sank less than 500 feet from the ERR wastewater treatment facility following Hurricane Katrina." R. Doc. 45 at 4–5. Having already explained that these arguments relate to liability rather than determination of costs, the Court need not—and does not—pass judgment on the veracity of these claims or how they might affect the liability element of this case.

or judgment," R. Doc. 45 at 7. Whether this expert's testimony is credible is a determination that must be made by the fact-finder at trial. However, the fact that this expert concluded that the costs incurred are "arbitrary and capricious" is enough to defeat a motion for summary judgment on this issue at this stage.

The Court notes that this decision does not speak to any party's potential liability and it does not mean that the Government will not ultimately be entitled to the reimbursable costs that it claims. This decision simply means that there is a genuine issue of material fact as to whether the costs incurred are "arbitrary and capricious" so as to not warrant summary judgment on this issue.

V. **CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that the United States' Motion for Partial Summary Judgment, R. Doc. 42, is hereby **DENIED**.

New Orleans, Louisiana, this 1st day of April, 2020.

　　　　　　　　　　　　　　　　　　　　　*/s/ Eldon E. Fallon*
　　　　　　　　　　　　　　　　　　　　　ELDON E. FALLON
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE