UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 19-2340 |
| | * | |
| E.R.R. LLC, ET AL. | * | SECTION "L" (5) |
| | * | |

**ORDER AND REASONS**

Before the Court are Defendants' Motions to Exclude and/or Strike the Testimony of Kristy Echols and Jacqueline Michel. R. Docs. 62, 64. The motions are opposed. R. Docs. 72, 77. Defendants filed replies. R. Docs. 101, 103. The Court now rules as follows.

I.   **BACKGROUND**

This case arises out of an alleged May 2015 oil spill on the Mississippi River. R. Doc. 1 at ¶ 1. Plaintiff, the United States of America ("the United States" or "the Government"), filed suit against Defendants E.R.R. LLC, Evergreen Resource Recovery LLC, and Hugh Nungesser, Jr. (collectively, "Defendants"), seeking the recovery of cleanup and removal costs of $632,262.49 under the Oil Pollution Act ("OPA"). R. Doc. 1. The United States contends that the oil spill originated from a wastewater storage and treatment facility in Belle Chasse, Louisiana owned by Defendants. R. Doc. 1 at ¶ 29.

The United States alleges that Defendants did not report oil discharge in the Mississippi River as required under the Clean Water Act. R. Doc. 1 at ¶ 27. Further, the United States avers that once the Coast Guard was made aware of the oil, "hours later," the Coast Guard found approximately one mile of oil contamination in the river and along the shoreline. R. Doc. 1 at ¶ 28. The United States contends that the "Coast Guard investigated potential sources of the oil spill and determined that the spill originated at Defendants' Facility." R. Doc. 1 at ¶ 29.

1

The United States asserts that Defendants then engaged Oil Mop, LLC—a Coast Guard-certified Oil Spill Removal Organization ("ORSO")—to conduct removal operations pursuant to a prior contractual agreement, with cleanup operations beginning on May 13, 2015. R. Doc. 1 at ¶ 30. Following completion of the cleanup operations, the United States alleges that "Oil Mop submitted its bill to Defendants on July 22, 2015 . . . [and] Defendants did not pay the bill." R. Doc. 1 at ¶ 33. The United States avers that, as a result of Defendants' refusal to make payment, Oil Mop's claim was presented to and adjudicated by the National Pollution Funds Center ("NPFC" or "the Fund"). R. Doc. 1 at ¶¶ 34–35. The NPFC subsequently accepted the claim and paid Oil Mop $631,228.74. R. Doc. 1 at ¶ 35. Moreover, pursuant to the terms of the alleged agreement, "Oil Mop assigned, transferred, and subrogated all, [sic] rights, claims, interests and rights of action to the United States." R. Doc. 1 at ¶ 35.

The United States thus seeks repayment from Defendants under § 1002(a) of the OPA, which provides:

> [E]ach responsible party for . . . a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) of [33 U.S.C. § 2702(b)] that result from such incident."

R. Doc. 1 at ¶ 9 (citing 33 U.S.C. § 2702(b)). The OPA defines "removal costs" as "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident." 33 U.S.C. § 2701(30).

Alternatively, the United States seeks repayment pursuant to its subrogation rights under OPA §§ 1012 and 1015. R. Doc. 1 at 1. After the NPFC has paid a claim, § 1012(f) of the OPA states the U.S. government "acquir[es] by subrogation all rights of the claimant . . . to recover from the responsible party." See 33 U.S.C. § 2712(f). Moreover, pursuant to § 1015(c) of the OPA, the

2

United States is entitled to bring an action seeking "any compensation paid by the Fund to any claimant pursuant to this Act, and all costs incurred by the Fund by reason of the claim, including interest (including prejudgment interest), administrative and adjudicative costs, and attorney's fees." 33 U.S.C. § 2715(c). Accordingly, in addition to a judgment against Defendants for removal costs of $632,262.49, the government seeks all additional costs incurred by the Fund, including interest, administrative and adjudicative costs, attorney's fees, and any other appropriate relief. R. Doc. 1 at ¶ 2.

Defendants deny all liability, deny its designation as a "responsible party" under the OPA, and deny the government's bringing suit under the OPA, alleging the government failed to comply with the statute's notice requirement. R. Doc. 8. Further, Defendants contend the Coast Guard failed to properly investigate other potential sources of the oil and did not properly identify the source or pathway from Defendants' facility to the oil spill. R. Doc. 8 at 12.

## II.   PRESENT MOTIONS

In these motions, Defendants argue that the Court should exclude the opinions, report, and expected testimony of Kristy Echols, R. Doc. 62, and Jacqueline Michel, Ph.D., R. Doc. 64. With respect to Echols, Defendants contend that exclusion is warranted because Echols did not disclose the bases for her opinions in her report, thereby failing to satisfy the reliability requirements of *Daubert*. R. Doc. 62 at 1. Moreover, Defendants assert that Echols' opinions in her report are not tailored to the facts of this case and do not satisfy the requirements of Federal Rule of Civil Procedure 26. R. Doc. 62 at 1. For Dr. Michel, Defendants argue that exclusion is warranted because Dr. Michel "did not perform any sort of scientific investigation" and she "lacks the expertise to even evaluate the oil spill samples in this case," and so her opinions "exceed her qualifications, are not based upon a reliable mythology, and are unhelpful." R. Doc. 64 at 1.

In opposition, Plaintiff argues that Echols is a forensic chemistry expert and the Supervisory Chemist at the Coast Guard's Marine Safety Laboratory, her opinion is reliable and helpful on scientific matters that are central to this case, and her report meets the requirements of Rule 26, Rule 702, and the *Daubert* standard, so her testimony and report should not be excluded. R. Doc. 72 at 1. Specifically, Plaintiff contends that Echols is "a leader in the field of oil spill sample analysis, she employed a longstanding and reliable methodology based on the published industry standard, and she provided the bases for her opinions in her report." R. Doc. 72 at 1. Similarly, Plaintiff opposes Defendants' motion to exclude Dr, Michel's opinions and report because Dr. Michel is a leading expert in oil spill planning, response, and assessment, she offers opinions based on her expertise, she uses a reliable methodology that is commonly used in the field, and her opinions are relevant to one of the primary issues in this case—namely, the source of the oil discharge. R. Doc. 77 at 1–2.

## III.   LAW AND ANALYSIS

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This rule codifies the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The Court must act as a "gate-keeper" to ensure the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010).

However, "[t]he primary purpose of the *Daubert* filter is to protect juries from being bamboozled by technical evidence of dubious merit." *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003). Accordingly, the Court's "gate-keeper" role is diminished in a bench trial because there is no need to protect the jury and risk tainting the trial by exposing the jury to unreliable evidence. *See Whitehouse Hotel Ltd. V. P'ship v. Comm'r*, 615 F.3d 321, 330 (5th Cir. 2010). Although the "gate-keeper" role may be diminished, the Court is still required to perform its gate-keeping function. *Metavante Corp. v. Emigrant Sav. Bank*, 2010 WL 3385961 (7th Cir. 2010).

The threshold question in determining whether an individual may offer expert testimony under Rule 702 is whether the individual is qualified to do so. Fed. R. Evid. 702. Apart from determining the qualifications of the expert, the Court's gate-keeping role also generally includes ensuring the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010).

Ultimately, a court's role as a gatekeeper does not replace the adversary system. *Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for [the fact finder's] consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). The Court now applies these legal principles to the individuals who are the subjects of these *Daubert* motions.

### a. Whether Echols' opinions and report fail to satisfy the reliability requirements of *Daubert* and disclosure requirements of Federal Rule of Civil Procedure 26

The threshold question in determining whether an individual may offer expert testimony under Rule 702 is whether the individual has the qualifications to do so. Fed. R. Evid. 702. But here, Defendants only challenge Echols' methodology and the bases of her opinions and reports. R. Doc. 62-1 at 1. Because Defendants do not contest Echols' qualifications, the Court will analyze only the reliability of her opinions and report.

Apart from determining the qualifications of the expert, the Court's gate-keeping role includes ensuring the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (quoting *Daubert*, 509 U.S. at 592–93). With respect to reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. To assess methodology, the Court looks to five factors: (1) "whether the theory or technique in question can be (and has been) tested," (2) "whether it has been subjected to peer review and publication," (3) "its known or potential error rate," (4) "the existence and maintenance of standards controlling its operation," and (5) "whether it has attracted widespread acceptance within a relevant scientific community." *Id.* at 579. Moreover, *Kumho Tire Co., Ltd. v. Carmichael* expanded *Daubert* to all experts and, in doing so, emphasized the flexibility of the Court's assessment under *Daubert*. Specifically, the Court has the leeway to decide how to assess experts based on their expertise, "whether basing testimony upon professional studies or personal experience." *Kumho Tire Co., Ltd.*, 526 U.S. at 152.

When the admissibility of expert testimony is challenged under *Daubert*, the proponent of the evidence bears the burden of proving that the testimony is reliable and relevant. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. *Id.* Rather, some objective, independent validation of the expert's methodology is required. *Id.* In this regard, however, it is not necessary for the proponent of the evidence to prove that "the testimony is factually correct." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). The *Daubert* analysis is not intended to judge the accuracy of the expert's conclusions. *See Guy v. Crown Equip. Corp.*, 394 F. 3d 320, 325 (5th Cir. 2004).

Defendants argue that Echols' report and opinions are not reliable because she claims to have compared the oil from the spill to oil from a transfer hose at the wastewater treatment facility in this case and to oil from a receiving tank at the ERR facility and found that they matched without explaining her methodology. R. Doc. 62-1 at 4. Moreover, Defendants also contend that Echols herself confirmed during her deposition that none of the three samples in question were identical, R. Doc. 62-1 at 4–5, but nevertheless concluded that they were a match without providing a basis for her conclusions, R. Doc. 62-1 at 6. Defendants thus assert that Echols' opinions are unreliable because she failed to provide the basis for her conclusions, R. Doc. 62-1 at 8, and that her expert report fails to comply with Federal Rule of Civil Procedure 26 because it is "sketchy and vague" and does not provide any basis or reasoning for her opinions, R. Doc. 62-1 at 10–11.

The Court concludes that Echols' opinions and report should not be excluded because she is a leader in the field of oil spill sample analysis, she employed a reliable methodology based on the published industry standard, and she provided the bases for her opinions in her report. Echols' expert report cites to the laboratory case file, which contains 100s of pages of laboratory data and supporting documentation, and her methodologies meet the ASTM International's (formerly, the

7

American Society for Testing and Materials). Questions relating to the bases and sources of Echols' opinions relate more to the weight that should be assigned to her testimony than to the admissibility of her testimony. *See Viterbo*, 826 F.2d at 422. Ultimately, this court's role as a gatekeeper does not replace the adversary system and Defendants are free to engage in vigorous cross-examination of this expert witness to challenge the reliability of her report and opinions. *See Daubert*, 509 U.S. at 596. As such, the Court concludes that an evaluation of whether Echols' opinions and report are supported by the facts of the case should be left to the fact-finder at trial. Accordingly, the Court will not exclude her opinions and testimony on this basis.

> **b. Whether Dr. Michel offers opinions that exceed her qualifications, are not based on reliable methodology, and are irrelevant to the fact finder**
>
>   **1. Qualifications**

The threshold question in determining whether an individual may offer expert testimony under Rule 702 is whether the individual has the qualifications to do so. Fed. R. Evid. 702. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). An expert may not "go beyond the scope of his expertise in giving his opinion." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)). The party trying to introduce expert testimony must show by a preponderance of proof the "qualification of a person to be a witness." *Daubert*, 509 U.S. 579 at 601 n.10 (citing Fed. R. Evid. 104(a)).

Defendants argue that Dr. Michel's opinions exceed the scope of her qualifications and should therefore be excluded. R. Doc. 64-1 at 1. Specifically, Defendants contend that it was beyond Dr. Michel's expertise to interpret the chemical lab data that she was provided, and she simply based her opinions on the oil sample analysis reports by Kristy Echols with no independent

investigation. R. Doc. 64-1 at 4–5. Defendants highlight the fact that Dr. Michel is not a forensic chemist and therefore could not interpret the chemical data, and also point to the fact that she never read the Marine Safety Laboratory Oil Sampling and Transmittal Guide ("Field Guide") that provides instructions on interpreting a chemist's results. R. Doc. 64-1 at 7. Defendants thus argue that Dr. Michel's testimony should be excluded as "duplicative, unhelpful, and unreliable" on this basis alone. R. Doc. 64-1 at 9.

The Court concludes that Jacqueline Michel, Ph.D., is qualified to offer expert testimony in this case because she is "one of the world's leading experts in oil spill planning, response, and assessment" and she offers her opinions on subjects that fall squarely within her expertise. R. Doc. 77 at 1–2. Specifically, Dr. Michel is a geochemist with more than 40 years' experience in oil spill planning, response, and assessment, she has personally responded on-scene to 50 oil spills, and she is a member of a team that provides scientific support for 50 to 100 oil spills per year. Moreover, Dr. Michel has written more than 200 published papers, reports, and guides on oil spill behavior, fate, and effects.

2.  **Reliability and Relevance**

Apart from determining the qualifications of the expert, the Court's gate-keeping role includes ensuring the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (quoting *Daubert*, 509 U.S. at 592–93). With respect to reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. To assess methodology, the Court looks to five factors: (1) "whether the theory or technique in question can

be (and has been) tested," (2) "whether it has been subjected to peer review and publication," (3) "its known or potential error rate," (4) "the existence and maintenance of standards controlling its operation," and (5) "whether it has attracted widespread acceptance within a relevant scientific community." *Id.* at 579. Moreover, *Kumho Tire Co., Ltd. v. Carmichael* expanded *Daubert* to all experts and, in doing so, emphasized the flexibility of the Court's assessment under *Daubert*. Specifically, the Court has the leeway to decide how to assess experts based on their expertise, "whether basing testimony upon professional studies or personal experience." *Kumho Tire Co., Ltd.*, 526 U.S. at 152.

Federal Rule of Evidence 702 "further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). This condition goes primarily to relevance. " Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18). *See also United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591–92.

In this case, Defendants argue that Dr. Michel's opinions and report are both unreliable and irrelevant, and should therefore be excluded. R. Doc. 64-1 at 9–10. Specifically, Defendants contend that Dr. Michel's opinions do not satisfy Daubert's reliability requirement because she allegedly did not perform any investigation or analysis to support her opinions and her opinions are based on a review of selected evidence and chemical data that she cannot interpret. R. Doc. 64-

1 at 9. Moreover, Defendants assert that Dr. Michel fails to identify the methodology that she used to support her conclusions in her report. R. Doc. 64-1 at 9. Finally, Defendants argue that Dr. Michel's opinions are not relevant because they will not assist a trier of fact and are "simply the result of her own credibility determinations and assessment of . . . evidence in this case" which should be reserved for the finder of fact R. Doc. 64-1 at 10.

The Court concludes that Dr. Michel's opinions are based on a methodology that are common in her field and her opinions are directly relevant and helpful to understand a core issue in this case. Specifically, although Dr. Michel did consider Echols' oil spill sample results in forming her opinion, she also considered 28 other sources in reaching her conclusions. Moreover, Dr. Michel's opinions are directly relevant in this case because Defendants are contesting that their facility was the source of the oil spill and Dr. Michel is testifying that Defendants' facility is the source of the spill. Ultimately, this court's role as a gatekeeper does not replace the adversary system and Defendants are free to engage in vigorous cross-examination of this expert witness to challenge the reliability of her report and opinions. *See Daubert*, 509 U.S. at 596. Accordingly, the Court will not exclude Dr. Michel's opinions and testimony from trial.

Nevertheless, to the extent it is necessary, the Court cautions Plaintiff to ensure that Dr. Michel does not engage in any credibility determinations, as the Fifth Circuit and other courts in this district have made it clear that such determinations fall within the province of the fact-finder. *See, e.g. Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (stating that "[c]redibility determinations, of course, fall within the jury's province" in relation to a challenge to expert testimony); *In the Matter of M&M Wireline & Offshore Servs., LLC*, No. CV 15-4999, 2016 WL 4681196, at *8 (E.D. La. Sept. 7, 2016) ("The Fifth Circuit and several lower courts have made clear that expert testimony may not usurp the factfinder's inherent authority to

11

make credibility determinations."); *Henson v. Odyssea Vessels, Inc.*, No. CIV.A. 07-613, 2008 WL 449726, at *2 (E.D. La. Feb. 15, 2008) (stating that the plaintiff was "certainly correct that determining the credibility of witnesses is the province of a jury" (citations omitted)).

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion to Strike and/or Exclude the Testimony of Kristy Echols, R. Doc. 62, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike and/or Exclude the Testimony of Jacqueline Michel, R. Doc. 64, is hereby **DENIED**.

New Orleans, Louisiana, this 28th day of May, 2020.

ELDON E. FALLON
U.S. DISTRICT COURT JUDGE