UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 19-2340 |
| | * | |
| E.R.R. LLC, ET AL. | * | SECTION "L" (5) |
| | * | |

**ORDER AND REASONS**

Before the Court is Plaintiff's Motion in Limine Concerning Evidence of Defendants' Freedom of Information Act Request to the U.S. Coast Guard. R. Doc. 66. The motion is opposed. R. Doc. 74. Plaintiff filed a reply. R. Doc. 105. The Court now rules as follows.

I.  BACKGROUND

This case arises out of an alleged May 2015 oil spill on the Mississippi River. R. Doc. 1 at ¶ 1. Plaintiff, the United States of America ("the United States" or "the Government"), filed suit against Defendants E.R.R. LLC, Evergreen Resource Recovery LLC, and Hugh Nungesser, Jr. (collectively, "Defendants"), seeking the recovery of cleanup and removal costs of $632,262.49 under the Oil Pollution Act ("OPA"). R. Doc. 1. The United States contends that the oil spill originated from a wastewater storage and treatment facility in Belle Chasse, Louisiana owned by Defendants. R. Doc. 1 at ¶ 29.

The United States alleges that Defendants did not report oil discharge in the Mississippi River as required under the Clean Water Act. R. Doc. 1 at ¶ 27. Further, the United States avers that once the Coast Guard was made aware of the oil, "hours later," the Coast Guard found approximately one mile of oil contamination in the river and along the shoreline. R. Doc. 1 at ¶ 28. The United States contends that the "Coast Guard investigated potential sources of the oil spill and determined that the spill originated at Defendants' Facility." R. Doc. 1 at ¶ 29.

1

The United States asserts that Defendants then engaged Oil Mop, LLC—a Coast Guard-certified Oil Spill Removal Organization ("ORSO")—to conduct removal operations pursuant to a prior contractual agreement, with cleanup operations beginning on May 13, 2015. R. Doc. 1 at ¶ 30. Following completion of the cleanup operations, the United States alleges that "Oil Mop submitted its bill to Defendants on July 22, 2015 . . . [and] Defendants did not pay the bill." R. Doc. 1 at ¶ 33. The United States avers that, as a result of Defendants' refusal to make payment, Oil Mop's claim was presented to and adjudicated by the National Pollution Funds Center ("NPFC" or "the Fund"). R. Doc. 1 at ¶¶ 34–35. The NPFC subsequently accepted the claim and paid Oil Mop $631,228.74. R. Doc. 1 at ¶ 35. Moreover, pursuant to the terms of the alleged agreement, "Oil Mop assigned, transferred, and subrogated all, [sic] rights, claims, interests and rights of action to the United States." R. Doc. 1 at ¶ 35.

The United States thus seeks repayment from Defendants under § 1002(a) of the OPA, which provides:

> [E]ach responsible party for . . . a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) of [33 U.S.C. § 2702(b)] that result from such incident."

R. Doc. 1 at ¶ 9 (citing 33 U.S.C. § 2702(b)). The OPA defines "removal costs" as "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident." 33 U.S.C. § 2701(30).

Alternatively, the United States seeks repayment pursuant to its subrogation rights under OPA §§ 1012 and 1015. R. Doc. 1 at 1. After the NPFC has paid a claim, § 1012(f) of the OPA states the U.S. government "acquir[es] by subrogation all rights of the claimant . . . to recover from the responsible party." *See* 33 U.S.C. § 2712(f). Moreover, pursuant to § 1015(c) of the OPA, the

2

United States is entitled to bring an action seeking "any compensation paid by the Fund to any claimant pursuant to this Act, and all costs incurred by the Fund by reason of the claim, including interest (including prejudgment interest), administrative and adjudicative costs, and attorney's fees." 33 U.S.C. § 2715(c). Accordingly, in addition to a judgment against Defendants for removal costs of $632,262.49, the government seeks all additional costs incurred by the Fund, including interest, administrative and adjudicative costs, attorney's fees, and any other appropriate relief. R. Doc. 1 at ¶ 2.

Defendants deny all liability, deny its designation as a "responsible party" under the OPA, and deny the government's bringing suit under the OPA, alleging the government failed to comply with the statute's notice requirement. R. Doc. 8. Further, Defendants contend the Coast Guard failed to properly investigate other potential sources of the oil and did not properly identify the source or pathway from Defendants' facility to the oil spill. R. Doc. 8 at 12.

## II. PRESENT MOTION

In this motion, Plaintiff seeks to prohibit Defendants from introducing evidence, questioning any witness, or presenting any arguments about the submission—and timeliness or completeness—of the U.S. Coast Guard's response to Defendants' two Freedom of Information Act ("FOIA") requests. R. Doc. 66 at 1. Plaintiff contends that these FOIA requests and the Coast Guard's responses to them are not relevant to any claim or defense in this case, and should therefore be excluded. R. Doc. 66-1 at 2.

In opposition Defendants argue that the evidence of the FOIA requests should not be excluded because: (1) Plaintiff was on notice to preserve certain evidence, which it failed to do, and so the factfinder should be able to "draw an inference that the missing information would be adverse to the Plaintiff's case"; and (2) "evidence of these [FOIA] requests specifically refutes

3

allegations in the Plaintiff's Complaint" and is therefore relevant to this case. R. Doc. 74 at 1.

In reply, Plaintiff asserts that Defendants' contentions that documents were not preserved and the Coast Guard's response to FOIA requests were incomplete are untrue and not relevant to this case. R. Doc. 105 at 2. Defendants never raised spoliation in a formal pleading, nor did they seek any "relief concerning purportedly unavailable evidence, filed no spoliation motion, and proffered not one shred of evidence from which the court could make a threshold determination on the foundation for any adverse inference." R. Doc. 105 at 3. Moreover, to the extent that Defendants seek to introduce the communications regarding the FOIA requests to refute allegations in Plaintiff's Complaint, Plaintiff acknowledges that it was mistaken in alleging that Defendants did not respond to NPFC communications but avers that this error is immaterial and only goes to background information rather than the merits of Plaintiff's claims against Defendants. R. Doc. 105 at 3–4. Plaintiff argues it is not seeking to exclude deposition testimony or any documents produced as part of the Coast Guard's FOIA responses, but rather, Plaintiff is only seeking to prohibit Defendants from introducing evidence or offering arguments regarding the submission of, and the Coast Guard's responses to, any FOIA requests. R. Doc. 105 at 4.

## III.  LAW AND ANALYSIS

Plaintiff has the burden of proving that the contaminate—in this case, oil—emanated from Defendants' facility and Defendants failed to report it. Only relevant evidence is admissible. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Whether a fact is "of consequence to the determination of the action is a question that is governed by the substantive law." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981). To be a fact of consequence, "the proposition to be proved must be part of the hypothesis

governing the case—a matter that is in issue, or probative of a matter that is in issue, in the litigation." *Id.*

Neither the fact that the FOIA requests were made, nor the Coast Guard responses to them, are of consequence here. Therefore, evidence of these requests, and the responses to them, is irrelevant and is inadmissible. Moreover, to the extent that Defendants are attempting to assert a spoliation claim with respect to FOIA documents, Defendants are barred from doing so because they never previously raised this issue in a formal pleading or brought it up during the course of discovery in this matter. In a case from the Southern District of Mississippi, which is not dispositive here, but is similar to this case, the court concluded that a plaintiff who had never raised the issue of spoliation before she did in a response to the defendants' motion in limine could not raise spoliation of evidence for the first time at trial. *Woulard v. Greenwood Motor Lines, Inc.*, No. 1:17CV231-HSO-JCG, 2019 WL 3318467 (S.D. Miss. Feb. 4, 2019). Specifically, the *Woulard* court noted that:

> Plaintiff never filed a motion to compel or any other request related to the purported unavailability or destruction of evidence. The discovery deadline passed nearly seven months ago . . . Plaintiff has never formally raised spoliation before the Court, other than in opposition to Defendants' Motion. Nor has Plaintiff proffered any evidence from which the Court could make a threshold determination as to the foundation for any adverse inference based upon the legal authority referenced earlier in this section.

*Id.*, at *5. Similarly, in this case, if Defendants wished to assert a spoliation claim, they should have done so in their pleadings or at least raised the issue during the course of discovery through a "motion to compel or any other request related to the purported unavailability or destruction of evidence." *See id.* It is not appropriate for Defendants to attempt to introduce this claim now in an opposition to a motion in limine and Defendants cannot expect an adverse inference at trial based on this allegation.

Nevertheless, to the extent that Defendants want to use the evidence obtained by the FOIA

requests to refute allegations in Plaintiff's Complaint regarding responses to the NPFC, this may be relevant, and Defendants are allowed to do so.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion in Limine Concerning Evidence of Defendants' Freedom of Information Act Request to the U.S. Coast Guard, R. Doc. 66, is hereby **GRANTED IN PART AND DENIED IN PART**. To the extent that Defendants want to introduce evidence obtained by their FOIA requests to refute allegations in Plaintiff's Complaint regarding responses to the NPFC, they shall be allowed to do so. However, to the extent that Defendants seek to introduce evidence of their FOIA requests and the timeliness or completeness of the Coast Guard's responses to assert a spoliation claim and request an adverse inference, they cannot do so.

New Orleans, Louisiana, this 9th day of June, 2020.

_____
ELDON E. FALLON
U.S. DISTRICT COURT JUDGE