UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 19-2340 |
| | * | |
| E.R.R. LLC, ET AL. | * | SECTION "L" (5) |
| | * | |

## ORDER AND REASONS

Before the Court is Defendants' Motion to Alter or Amend Order, R. Doc. 112, regarding this Court's Order granting in part and denying in part Plaintiff's Motion *in Limine* pertaining to Defendants' Freedom of Information Act requests. R. Docs. 109; 66. The pending motion is opposed, R. Doc. 113. Plaintiff United States of America filed a reply on July 23, 2020, R. Doc. 116. Having considered the pertinent pleadings and all parties' arguments, the Court now rules as follows.

### I.   BACKGROUND

This case arises out of an alleged oil spill on the Mississippi River in May 2015. R. Doc. 1 at ¶ 1. Plaintiff, the United States of America, filed suit against E.R.R. LLC, Evergreen Resource Recovery LLC, and Hugh Nungesser, Jr. (collectively, "Defendants"), seeking recovery of cleanup and removal costs totaling $632,262.49 under the Oil Pollution Act ("OPA"). Plaintiff contends that the oil spill originated from a wastewater storage and treatment facility in Belle Chasse, Louisiana, owned by Defendants. *Id.* at ¶ 29. Plaintiff alleges that Defendants did not report oil discharge in the Mississippi River as required under the Clean Water Act. *Id.* at ¶ 27. Further, Plaintiff avers that once the Coast Guard was made aware of the oil "hours later," the Coast Guard found approximately one mile of oil contamination in the river and along the shoreline. *Id.* at ¶ 28. Plaintiff contends that the "Coast Guard investigated potential sources of the oil spill and

1

determined that the spill originated at Defendants' Facility." R. Doc. 1 at ¶ 29.

Plaintiff asserts that Defendants then engaged Oil Mop, LLC ("Oil Mop")—a Coast Guard-certified Oil Spill Removal Organization—to conduct removal operations pursuant to a prior contractual agreement, with cleanup operations beginning on May 13, 2015. *Id.* at ¶ 30. Following completion of the cleanup operations, Plaintiff alleges that "Oil Mop submitted its bill to Defendants on July 22, 2015 . . . [and] Defendants did not pay the bill." *Id.* at ¶ 33. Plaintiff avers that, as a result of Defendants' refusal to make payment, Oil Mop's claim was presented to and adjudicated by the National Pollution Funds Center ("NPFC" or "the Fund"). *Id.* at ¶¶ 34–35. The NPFC subsequently accepted the claim and paid Oil Mop $631,228.74. *Id.* at ¶ 35. Moreover, pursuant to the terms of the alleged agreement, "Oil Mop assigned, transferred, and subrogated all, [sic] rights, claims, interests and rights of action to the United States." *Id.*

Plaintiff seeks compensation from Defendants under two theories. First, Plaintiff seeks repayment costs and damages under § 1002(a) of the OPA, which provides that "each responsible party . . . is liable for the removal costs and damages . . . that result from such incident." 33 U.S.C. § 2712. In the case of a privately-owned onshore facility that is not a pipeline, the OPA defines "responsible party" as "any person owning or operating the facility." 33 U.S.C. 2701(32)(B). The OPA defines "removal costs" as "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident." *Id.* at § 2701(31). Second, Plaintiff seeks repayment pursuant to its subrogation rights under §§ 1012 and 1015 of the OPA. *Id.* at §§ 2712(f) and 2715; R. Doc. 1 at 1. After the NPFC has paid a claim, § 1012(f) of the OPA states the U.S. government "acquir[es] by subrogation all rights of the claimant . . . to recover from the responsible party." 33 U.S.C. § 2712(f). Moreover, § 1015(c) of the OPA entitles the subrogee

to bring an action seeking "any compensation paid by the Fund to any claimant pursuant to this Act, and all costs incurred by the Fund by reason of the claim, including interest (including prejudgment interest), administrative and adjudicative costs, and attorney's fees." *Id.* at 2715(c). Accordingly, as Oil Mop's subrogee, Plaintiff seeks a judgment against Defendants for removal costs of $632,262.49, as well as all additional costs incurred by the Fund, including interest, administrative and adjudicative costs, attorney's fees, and any other appropriate relief. R. Doc. 1 at ¶ 2.

Defendants deny all liability, object to Plaintiff's designation of Defendants as responsible parties under the OPA, and object to Plaintiff's lawsuit in general, alleging that Plaintiff failed to comply with the OPA's notice requirement. R. Doc. 8. Defendants contend the Coast Guard failed to properly investigate other potential sources of the oil and did not properly identify the source or pathway from Defendants' facility to the oil spill. *Id.* at 12. Defendants maintain that "[t]he oil discharge and cleanup costs that are the subject of the Plaintiff's Complaint were caused solely by negligence, acts, fault, or omissions of one or more third parties for whom the Defendants are not legally responsible." *Id.* at 10.

## II. PRESENT MOTION

In this motion, Defendants seek to alter or amend this Court's June 9, 2020 Order, which granted in part and denied in part Plaintiff's Motion *in Limine* pertaining to evidence of Defendants' Freedom of Information Act ("FOIA") requests to the Coast Guard. R. Doc. 112. Defendants request that the Court correct a manifest error of fact or law in this Order pursuant to its power to reconsider orders under Rule 59(e) of the Federal Rules of Civil Procedure. *Id.* at 1-2. Defendants also ask that the Court deny Plaintiff's related Motion *in Limine* in full. *Id.* at 2; R. Doc. 66. In its Order, the Court excluded certain evidence pertaining to Defendants' FOIA requests

to the Coast Guard. R. Doc. 109 at 6. Namely, the Court prohibited Defendants from "introduc[ing] evidence of their FOIA requests and the timeliness or completeness of the Coast Guard's responses to assert a spoliation claim and request an adverse inference." *Id.* The Order does, however, permit Defendants to introduce any evidence they *actually obtained* by their FOIA requests. *Id.*

Defendants dispute the Court's decision to bar them from asserting a spoliation claim regarding their FOIA requests, arguing that this finding is manifestly wrong. *Id.* Defendants contend the Court improperly concluded that Defendants "never previously raised this issue in a formal pleading or brought it up during the course of discovery in this matter." R. Docs. 112 at 1; 109 at 5. Defendants argue that they timely and properly raised spoliation by pleading this defense with specificity in their answer to the complaint. R. Doc. 112 at 1-3. Defendants argue that under the Federal Rules of Civil Procedure, an answer to a complaint is considered a formal pleading. *Id.* at 3. Moreover, Defendants claim that spoliation has been a consistent focus of discovery, sufficiently putting Plaintiff on notice of this issue. *Id.* at 1. Defendants warn that the Court's Order strikes certain affirmative defenses without allowing proper notice or opportunity to fully brief these issues. *Id.* at 2.

### III.  LAW AND ANALYSIS

The Federal Rules of Civil Procedure do not explicitly recognize motions for reconsideration of interlocutory orders like the order at issue here. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). The Fifth Circuit, however, has consistently held that "an order that adjudicates fewer than all the claims among all of the parties" may be challenged under Rule 54(b). *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.*, No. 11-2405, 2012 WL 876717, at *1 (E.D. La. March 14, 2012) (citations omitted). Rule 54(b) provides that this type of order "does not end the action as to any of the claims or parties and may be revised at any time before the entry

of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). When deciding whether to grant a motion to alter or amend an order under Rule 54(b), a district court has considerable discretion. *Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993); *see also Flynn v. Terrebonne Parish School Bd.*, 348 F. Supp. 2d 769, 771 (E.D. La. 2004). Courts within the Fifth Circuit typically apply the standard of review for Rule 59(e) motions to alter or amend final judgments to Rule 54(b) motions to reconsider interlocutory orders. *River Birch*, 2012 WL 876717 at *1.

To prevail on a Rule 59(e) motion to alter or amend the judgment, courts in this district have held that the moving party must prove one of the following: "(1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence, (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is necessary is justified by an intervening change in the controlling law." *Flynn*, 348 F. Supp. 2d at 771. A "[c]ourt's reconsideration of a prior order is an extraordinary remedy which should be used only sparingly," and the Fifth Circuit favors denial of Rule 59(e) motions to amend or alter. *Id.*; *see also Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 610-11 (5th Cir. 1993). Accordingly, a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, Rule 59(e) serves the narrow purpose of correcting manifest errors of law or fact, as alleged here, or presenting newly discovered evidence. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990); *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'"

*Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas–Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)).

Defendants' ability to assert a spoliation claim is central to the instant motion, as the Court has barred Defendants from "attempting to assert a spoliation claim with respect to FOIA documents." R. Doc. 109 at 6. Defendants are correct that the issue of spoliation was raised in their answer to the complaint, and that it has been a focus of discovery. The Court's June 9, 2020 Order, R. Doc. 109, is thus amended to correct this fact. This, however, does not resolve the issue of whether spoliation has been adequately proven to require a factfinder to conclude that the lost or discarded material in question would have been adverse to the Plaintiff.

Spoliation is the destruction or the significant and meaningful alteration of evidence. *Wright v. Nat'l Interstate Ins. Co.*, No. 16-16214, 2017 WL 4011206, at *2 (E.D. La. Sept. 12, 2017) (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). In admiralty law and in OPA cases, a finding of spoliation "requires bad faith and that evidence was crucial," and federal evidence law governs. 7A West's Fed. Forms, Admiralty § 11880.50 (4th ed.); *see also In re* Oil Spill by the Oil Rig "Deepwater Horizon," No. 2179, 2012 WL 174645, at *1 (E.D. La. Jan. 20, 2012); *In Matter of Complaint of Boston Boat III, L.L.C.*, 310 F.R.D. 510 (S.D. Fla. 2015).

For the spoliation of evidence doctrine to apply, the movant must prove two elements: (1) that the party who had control over the evidence had a duty to preserve it at the time the evidence was destroyed; and (2) that the destruction of evidence was intentional. *Garnett v. Pugh*, 2015 WL 1245672, at *4 (E.D. La. March 18, 2015). It is well settled in the Fifth Circuit that an adverse inference may be drawn once the bad faith element is proven. *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000); *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *Vick v. Texas*

6

*Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975). "Adverse inference sanctions 'are properly viewed as among the most severe sanctions a court can administer.'" *Spencer v. Hercules Offshore, Inc.*, No. 13-4706, 2014 WL 1681736, at *4 (E.D. La. Apr. 28, 2014). The Court will now turn to Defendants' assertion that an adverse inference must be drawn against Plaintiffs based on the spoliation-related evidence presented to the Court.

The Court finds that at this time, a factfinder cannot draw an adverse inference against Plaintiff with regard to Defendants' FOIA requests. Here, the Court finds that Defendants have not definitively shown that the Coast Guard destroyed evidence pertaining to these requests or that they did so in bad faith. To date, Defendants have plausibly argued that information may have been discarded or overlooked by the Coast Guard. However, Defendants have failed to meet the high bar of demonstrating that the Coast Guard intentionally destroyed evidence *in bad faith* to benefit both the United States as well as Oil Mop, the oil spill removal organization and subrogor under the OPA. Nevertheless, Defendants are free to bring evidence to show what they requested from the Coast Guard and the Coast Guard's response.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion to Alter or Amend Order, R. Doc. 112, is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** with respect to Defendants' request that the Court reconsider its June 6, 2020 Order and correct its erroneous assertion that Defendants had not properly raised a spoliation defense and are barred from doing so. The Motion is **DENIED** with regard to Defendants' request that the Court deny Plaintiff's Motion *in Limine*, R. Doc. 66, in full.

The Court's June 6, 2020 Order, R. Doc. 109, is hereby **VACATED IN PART** to the extent

it is inconsistent with this Order.

    New Orleans, Louisiana, this 14th day of August, 2020.

                                            ELDON E. FALLON
                                            U.S. DISTRICT COURT JUDGE