## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 19-2340** |
| | * | |
| **E.R.R. LLC, ET AL.** | * | **SECTION "L" (5)** |
| | * | |

## ORDER AND REASONS

The Court has before it Plaintiff's Renewed Motion to Exclude the Removal-Cost Testimony of Frank Edwards, R. Doc. 203, and Plaintiff's Motion for Reconsideration of its Two Motions for Partial Summary Judgment, R. Doc. 205. Defendants oppose both. R. Docs. 214, 215. Having considered the parties' briefing and the applicable law, the Court rules as follows.

### I.      BACKGROUND

This case arises from an alleged oil spill on the Mississippi River on May 12, 2015. R. Doc. 1 at ¶ 1. Plaintiff, the United States of America, filed suit against E.R.R. LLC, Evergreen Resource Recovery LLC, and Hugh Nungesser, Jr. (collectively, "Defendants"), seeking recovery of cleanup and removal costs totaling $632,262.49 under the Oil Pollution Act ("OPA"). Plaintiff contends that the oil spill originated from a wastewater storage and treatment facility in Belle Chasse, Louisiana, owned by Defendants. *Id.* at ¶ 29.  Plaintiff alleges that Defendants did not report oil discharge in the Mississippi River as required under the Clean Water Act. *Id.* at ¶ 27. Further, Plaintiff avers that once the Coast Guard was made aware of the oil "hours later," the Coast Guard found approximately one mile of oil contamination in the river and along the shoreline. *Id.* at ¶ 28. Plaintiff contends that the "Coast Guard investigated potential sources of the oil spill and determined that the spill originated at Defendants' Facility." R. Doc. 1 at ¶ 29.

Plaintiff asserts that Defendants then engaged Oil Mop, LLC ("Oil Mop")—a Coast Guard-

certified oil spill removal organization—to conduct removal operations pursuant to a prior contractual agreement, with cleanup operations beginning on May 13, 2015. *Id.* at ¶ 30. Following completion of the cleanup operations, Plaintiff alleges that "Oil Mop submitted its bill to Defendants on July 22, 2015 . . . [and] Defendants did not pay the bill." *Id.* at ¶ 33. Plaintiff avers that, as a result of Defendants' refusal to make payment, Oil Mop's claim was presented to and adjudicated by the National Pollution Funds Center ("NPFC" or "the Fund"). *Id.* at ¶¶ 34–35. The NPFC subsequently accepted the claim and paid Oil Mop $631,228.74. *Id.* at ¶ 35. Moreover, pursuant to the terms of the alleged agreement, "Oil Mop assigned, transferred, and subrogated all, [sic] rights, claims, interests and rights of action to the United States." *Id.*

Plaintiff seeks compensation from Defendants under two theories. First, Plaintiff seeks repayment costs and damages under § 1002(a) of the OPA, which provides that "each responsible party . . . is liable for the removal costs and damages . . . that result from such incident." 33 U.S.C. § 2712. In the case of a privately-owned onshore facility that is not a pipeline, the OPA defines "responsible party" as "any person owning or operating the facility." 33 U.S.C. 2701(32)(B). The OPA defines "removal costs" as "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident." *Id.* at § 2701(31).

Second, Plaintiff seeks repayment pursuant to its subrogation rights under §§ 1012 and 1015 of the OPA. *Id.* at §§ 2712(f) and 2715; R. Doc. 1 at 1. After the NPFC has paid a claim, § 1012(f) of the OPA states the federal government "acquir[es] by subrogation all rights of the claimant . . . to recover from the responsible party." 33 U.S.C. § 2712(f). Moreover, § 1015(c) of the OPA entitles the subrogee to bring an action seeking "any compensation paid by the Fund to any claimant pursuant to this Act, and all costs incurred by the Fund by reason of the claim,

including interest (including prejudgment interest), administrative and adjudicative costs, and attorney's fees." *Id.* at 2715(c). Accordingly, as Oil Mop's subrogee, Plaintiff seeks a judgment against Defendants for removal costs of $632,262.49, as well as all additional costs incurred by the Fund, including interest, administrative and adjudicative costs, attorney's fees, and any other appropriate relief. R. Doc. 1 at ¶ 2.

Defendants deny all liability, object to Plaintiff's designation of Defendants as responsible parties under the OPA, and object to Plaintiff's lawsuit in general, alleging that Plaintiff failed to comply with the OPA's notice requirement. R. Doc. 8. Defendants contend the Coast Guard failed to properly investigate other potential sources of the oil and did not properly identify the source or pathway from Defendants' facility to the oil spill. *Id.* at 12. Defendants maintain that "[t]he oil discharge and cleanup costs that are the subject of the Plaintiff's Complaint were caused solely by negligence, acts, fault, or omissions of one or more third parties for whom the Defendants are not legally responsible." *Id.* at 10.

A bench trial began on October 5, 2020 and concluded on October 8, 2020. The Court issues its Findings of Fact and Conclusions of Law on December 17, 2020, concluding that Defendants were liable to Plaintiff for $631,228.74 of removal costs paid from the Fund. R. Doc. 147 at 18. The Court also found that Defendants were liable for $1,033.75 in administrative costs incurred by the NPFC to adjudicate Oil Mop's claim; for interest, including prejudgment interest; and for all litigation costs and attorney's fees. *Id.* at 18-19.

However, Defendants appealed, and on May 26, 2022, the United States Court of Appeals for the Fifth Circuit reversed this Court's decision in part, vacated it in part, and remanded the case for a new trial. The Fifth Circuit only addressed Defendants' argument that they had a right to a jury trial, holding that Defendants did have a right to a jury trial under the Seventh Amendment

because this case constitutes a "suit at common law." Accordingly, the Fifth Circuit remanded the case to this Court for a jury trial.

## II.    PRESENT MOTIONS

In anticipation of the retrial of this matter before a jury, the United States has filed two motions asking the Court to reconsider previous pre-trial rulings.

In the first pending motion, Plaintiff's Renewed Motion to Exclude Removal-Cost Testimony of Frank Edwards, R. Doc. 203, the United States moves the Court to reconsider the denial, R. Doc. 108, of its prior motion to exclude the testimony of Frank Edwards, R. Doc. 65. The United States argues that Mr. Edwards "seeks to offer an opinion that is the epitome of junk science" and that his methods are unreliable and untested. R. Doc. 203 at 1. It asserts that the Court must reconsider its prior opinion now that this matter is set to be tried before a jury so that it may "exercise its important gatekeeper role under Rules 702 and 703 or the Federal Rules of evidence[.]" Defendants oppose, alleging that "there is no legal, procedural, or factual basis for the Court to reverse its prior decision to allow the testimony of Mr. Edwards[,]" R. Doc. 214 at 1, and that, in any case, Mr. Edwards' proposed testimony meets the standards for admissibility of expert testimony. *Id.* at 7.

In the second pending motion, the United States moves the Court to reconsider the denial, R. Doc. 122, of its two prior motions for partial summary judgment, R. Docs. 61, 71. The United States argues that there is no genuine dispute over the amount of recoverable removal costs and administrative adjudication costs, and that all but one of the elements of Defendants' liability under the OPA are beyond genuine dispute. R. Doc. 205 at 2–7.  Defendants oppose, arguing that the United States does not point to any intervening change in the law or the facts that would warrant a reversal of the Court's prior denial of its motions for partial summary judgment, and that, in any

case, factual issues exist that preclude summary judgment. R. Doc. 215 at 1–8.

### III.   APPLICABLE LAW

#### a.  Motion to Exclude

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This rule codifies the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The Court must act as a "gate-keeper" to ensure the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). "The primary purpose of the *Daubert* filter is to protect juries from being bamboozled by technical evidence of dubious merit." *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003); *see also Whitehouse Hotel Ltd. Partnership v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010).

The threshold question in determining whether an individual may offer expert testimony under Rule 702 is whether the individual is qualified to do so. Fed. R. Evid. 702. However,  the United States does not challenge the Mr. Edwards' qualifications, so the Court will analyze only the reliability and relevance of  Mr. Edwards' opinions and expert report.

Apart from determining the qualifications of the expert, the Court's gate-keeping role also

generally includes ensuring the proffered expert testimony is "both reliable and relevant." *Wells*, 601 F.3d at 378. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (quoting *Daubert*, 509 U.S. at 592–93). With respect to reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. To assess methodology, the Court looks to five factors: (1) "whether the theory or technique in question can be (and has been) tested," (2) "whether it has been subjected to peer review and publication," (3) "its known or potential error rate," (4) "the existence and maintenance of standards controlling its operation," and (5) "whether it has attracted widespread acceptance within a relevant scientific community." *Id.* at 579. Moreover, *Kumho Tire* expanded *Daubert* to all experts and, in doing so, emphasized the flexibility of the Court's assessment under *Daubert*. Specifically, the Court has the leeway to decide how to assess experts based on their expertise, "whether basing testimony upon professional studies or personal experience." *Kumho Tire*, 526 U.S. at 152.

When the admissibility of expert testimony is challenged under *Daubert*, the proponent of the evidence bears the burden of proving that the testimony is reliable and relevant. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. *Id.* Rather, some objective, independent validation of the expert's methodology is required. *Id.* In this regard, however, it is not necessary for the proponent of the evidence to prove that "the testimony is factually correct." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). The *Daubert* analysis is not intended to judge the accuracy of the expert's conclusions. See *Guy v. Crown Equip. Corp.*, 394 F. 3d 320, 325 (5th Cir. 2004).

Ultimately, a court's role as a gatekeeper does not replace the adversary system. *Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for [the fact finder's] consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

### b.  Motion to Reconsider Motions for Partial Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Id. The Court must find "[a] factual dispute [to be] 'genuine' if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, the Court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). But "unsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50.

## IV.   DISCUSSION

### a.  Motion to Exclude

In its prior order denying Plaintiff's motion to exclude the testimony of Mr. Edwards, the Court concluded that Mr. Edwards' testimony should not be excluded for lack of sufficient basis in facts because Mr. Edwards had

> performed an independent investigation to arrive at his opinions, which involved an assessment of over 1,600 pages of documents produced by Defendants, over 6,000 pages of documents produced by Plaintiff, several depositions, records from the Envision barge, records from Intertek, reports of Plaintiffs' experts, and a review of oil spill reports on file with the National Response Center.

R. Doc. 108 at 9 (citing R. Doc. 78 at 2–3).

The Court further stated that questions relating to the bases and sources of Mr. Edwards' opinions relate more to the weight that should be assigned to his testimony than to the admissibility of his testimony. *Id.* (citing *Viterbo*, 826 F.2d at 422). It noted that the Court's role as a gatekeeper does not replace the adversary system, and encouraged Plaintiff to engage in vigorous cross-examination of this expert witness to challenge the reliability of his report and opinions. *Id.* (citing *Daubert*, 509 U.S. at 596). Ultimately, the Court concluded that an evaluation of whether Mr.

Edwards' opinions were supported by the facts of the case should be left to the fact-finder at trial, and declined to exclude his opinions and testimony on that basis. *Id.*

Although the Court did note in that decision that the Court's "gate-keeper" role is diminished in a bench trial because there is no need to protect the jury and risk tainting the trial by exposing the jury to unreliable evidence, *Id.* at 5 (citing *Whitehouse Hotel Ltd. V. P'ship v. Comm'r*, 615 F.3d at 330), it recognized also that the Court was still required to perform its gate-keeping function. *Metavante Corp. v. Emigrant Sav. Bank*, 2010 WL 3385961 (7th Cir. 2010). Additionally, at the time that the Court issued its decision denying the motion to exclude Mr. Edwards' testimony, this matter was set to proceed as a bench trial before an advisory jury. After reviewing its prior order, the Court finds that it performed its gatekeeper function to the standard required for a trial before a jury. Accordingly, the Court sees no reason to revise its prior decision in this matter. Plaintiff's renewed Motion to Exclude is therefore DENIED.

### b.  Motion to Reconsider Motions for Partial Summary Judgment

The United States does not identify under which Federal Rule it moves the Court to reconsider its previous denial of Plaintiff's partial motions for summary judgment. Typically, motions to reconsider are analyzed under either Federal Rule of Civil Procedure 59(e) or 60. However, because the Court finds that the motion to reconsider fails under the standard applicable to either rule, the Court proceeds to reconsider its prior rulings without first making that determination.

### i.  Motion for Partial Summary Judgment, R. Doc. 61 – Recoverable Costs

The United States' argument that there is no genuine dispute over the amount of recoverable removal costs relies on the assumption that the Court will rule the testimony of Mr.

Edwards, which creates a factual dispute as to this issue, to be inadmissible. As discussed *supra*, the Court has held once more that this testimony is admissible. Accordingly, there remains a factual dispute which precludes a grant of summary judgment on this issue. Plaintiff's motion to reconsider the Court's denial of its first motion for partial summary judgment, R. Doc. 61, is therefore DENIED.

### i.   Motion for Summary Judgment, R. Doc. 71 – Defendants' OPA Liability

To demonstrate that a party is strictly liable under the OPA, the government must prove that (1) the defendant is a "responsible party" (2) for the "facility" or "vessel" (3) from which oil was discharged, or from which there was a substantial threat of discharge, (4) "into or upon the navigable waters or adjoining shorelines" and (5) that the discharge resulted in "removal costs and damages." *United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808, 815 (S.D. Tex. 2009) (quoting 33 U.S.C. § 2702(a)).

The United States argues that the only element of liability under the OPA contested by Defendants is element three: whether the oil discharge came "from" Defendant's facility. R. Doc. 205 at 4. Thus, it asks the Court to enter summary judgment on all other elements of OPA liability in order to "streamline the case for re-trial before a jury and avoid wasting the Court's and the jury's time[.]" *Id.* at 1. Unfortunately, as the Court held previously, there remain numerous contested issues of fact as to the other elements of OPA liability. As Defendant argues, it is contested whether E.R.R. was a "responsible party" for a facility from which oil was discharged into or upon the navigable waters or adjoining shorelines. R. Doc. 215 at 6.  It is contested which party/parties owned or operated the wastewater treatment plant. *Id.* It is contested whether the oil that was allegedly discharged was "oil" within the meaning of the OPA. *Id.* at 6–7. It is contested

whether there was a "discharge" at all. *Id.* at 7.

Accordingly, Plaintiff's motion to reconsider the Court's denial of its second motion for summary judgment, R. Doc. 71, is also DENIED.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motions, R. Docs. 203 and 205, are hereby **DENIED**.

New Orleans, Louisiana, this 21st day of October 2022.

ELDON E. FALLON
U.S. DISTRICT COURT JUDGE